UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JACOB VAN METER, et al.,            )
                                     )
            Plaintiffs,              )
                                     )        1:09-cv-00633-JAW
      v.                             )
                                     )
BRENDA HARVEY, COMMISSIONER,         )
MAINE DEPARTMENT OF                  )
HEALTH AND HUMAN SERVICES,           )
                                     )
            Defendant.               )

## ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Seeking declaratory and injunctive relief from the Maine Department of Health and Human Services (DHHS), Plaintiffs move for class certification. Because Plaintiffs have established each of the requirements for class certification, the Court grants their motion.

## I.     STATEMENT OF FACTS

On December 18, 2009, Jacob Van Meter, Adam Fletcher—by and through his guardian, Gail Fletcher—and Eric Reeves (Named Plaintiffs) filed a complaint seeking relief under 42 U.S.C. § 1983 for DHHS's alleged violations of the Nursing Home Reform Amendments to the federal Medicaid Act (NHRA), 42 U.S.C. § 1396r(e); Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*; and Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, for failing to ensure the Named Plaintiffs "receive appropriate treatment in the most integrated setting possible." *Compl.* ¶¶ 1-6 (Docket # 1) (*Initial Compl.*). That same day, the Named Plaintiffs moved individually for leave to proceed *in forma*

*pauperis. Application to Proceed in District Court Without Prepaying Fees or Costs* (Docket #s 3, 4, 5). The Magistrate Judge granted those motions on December 21, 2009. *Order Granting Mots. to Proceed* in Forma Pauperis (Docket # 7). On February 22, 2010, DHHS answered the complaint. *Answer to Compl.* (Docket # 12) (*Answer*).

On August 10, 2010, the Plaintiffs moved for leave to file an amended complaint and for class certification. *Pls.' Assented to Mot. for Leave to File First Am. Compl.* (Docket # 22); *Pls.' Mot for Class Certification* (Docket # 23) (*Pls.' Mot.*). The next day, the Court granted without objection the motion for leave to file an amended complaint. *Order* (Docket # 29). That same day, the Plaintiffs filed an amended complaint, which defined the class as:

> [T]he Named Plaintiffs . . . and all other Maine residents who currently are or in the future will be: (1) eligible for and enrolled in MaineCare, (2) age 21 or older, (3) have a related condition as defined at 42 C.F.R. § 435.1010, other than autism, and who do not have a diagnosis of Alzheimer's or dementia,[1] and (4) who are or should be screened for

---

[1] The regulation defines "persons with related conditions" as:
> Individuals who have a severe, chronic disability that meets all of the following conditions:
> (a) It is attributable to—
> (1) Cerebral palsy or epilepsy; or
> (2) Any other condition, other than mental illness, found to be closely related to mental retardation because this condition results in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons, and requires treatment or services similar to those required for these persons.
> (b) It is manifested before the person reaches age 22.
> (c) It is likely to continue indefinitely.
> (d) It results in substantial functional limitations in three or more of the following areas of major life activity:
> (1) Self-care.
> (2) Understanding and use of language.
> (3) Learning.
> (4) Mobility.
> (5) Self-direction.
> (6) Capacity for independent living.

admission to nursing facilities pursuant 42. U.S.C. § 1396r(e)(7) and 42 C.F.R. §§ 483.112 *et seq.*[2]

*First Am. Class Action Compl.* (Docket # 24) (*Class Action Compl.*).  On August 31, 2010, DHHS responded in opposition to the motion for class certification.  *Def.'s Opp'n to Mot. for Class Certification* (Docket # 33) (*Def.'s Opp'n*).  On September 14, 2010, Plaintiffs replied to DHHS's response.  *Pls.' Reply to Def.'s Opp'n to Mot. for Class Certification* (Docket # 40) (*Pls.' Reply*).

## II.  DISCUSSION

### A.  The Parties' Positions

#### 1.  Plaintiffs' Motion

Plaintiffs argue that class certification is appropriate because all of the elements of a Rule 23(a) and one of the elements of Rule 23(b) are met.  *Pls.' Mot.* at 3-4 (citing FED. R. CIV. P. 23)).  They assert that the elements of numerosity, commonality, typicality, and adequacy of representation are met under 23(a).  *Id.* at 3.  In regards to 23(b), they assert that class action is appropriate under 23(b)(2) because DHHS "has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  *Id.* at 4.  They address each element individually.

Plaintiffs observe that the first pre-requisite for class certification is that "the class is so numerous that joinder of all members is impracticable."  *Id.* (citing FED.

42 C.F.R. § 435.1010.
[2] The amended complaint also added a claim for relief under the "reasonable promptness" provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(8).  *First Am. Class Action Compl.* ¶¶ 82-83 (Docket # 24) (*Class Action Compl.*).

R. Civ. P. 23(a)(1)). They argue that in the First Circuit, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* (quoting *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009)). They contend that their putative class consists of at least forty-one current members with cerebral palsy, an unidentified number of individuals with epilepsy and other related conditions, and "new individuals entering nursing facilities each day who are at risk of the same rights violations and are members of the proposed class." *See id.* at 3. Plaintiffs also argue that where, as here, only declaratory and injunctive relief is sought, they "need not establish the precise number or identity of class members." *Id.* at 5 (quoting *Rolland v. Cellucci*, No CIV A 98-30208-KPN, 1999 WL 34815562, at *3 (D. Mass. Feb. 2, 1999)).

Having asserted that they meet the First Circuit's general numerical threshold, Plaintiffs argue that practicability is the more important consideration in weighing 23(a)(1). *Id.* at 4 (citing *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004)). They argue that "[i]n order to determine whether joinder would be impracticable, 'courts give significant weight to such factors as the ability of class members to bring their own separate actions, their geographical diversity and the type of relief sought.'" *Id.* (quoting *Rolland*, 1999 WL 34815562, at *3). They argue that "it would be extremely difficult, and thus impracticable, for the members of the proposed class to maintain individual suits against [DHHS],

particularly given the nature of their disabilities, their limited economic resources, their geographical diversity, and their segregation in nursing facilities." *Id.* at 6. Furthermore, they contend that the inability to precisely identify each individual class member and the likelihood that the class includes unnamed future members are factors making joinder less practicable. *Id.* at 5.

The Plaintiffs argue that second prerequisite for class certification is met because there are questions of law and fact common to the class. *Id.* at 6 (citing FED. R. CIV. P. 23(a)(2)). They assert that "[b]ecause the class need share only a single legal or factual issue at this stage of the analysis, the commonality prerequisite is ordinarily easily satisfied." *Id.* (quoting *Mulligan v. Choice Mortg. Corp. USA*, No. CIV. 96-596-B, 1998 WL 544431, at *3 (D.N.H. Aug. 11, 1998)). They argue that although class members' individual circumstances differ, they all "challenge systemic issues with [DHHS's] policies and practices in the provision of services in nursing facilities and in the community." *Id.* at 7. Plaintiffs identify what they argue are questions of law and fact common to all putative class members. *See id* at 7-8.

They argue that the third prerequisite to class certification is met because Plaintiffs' claims are typical of those of the class. *Id.* at 8 (citing FED. R. CIV. P. 23(a)(3)). They contend that this requirement is met when the class representatives "possess the same interest and suffer the same injury" as other class members. *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Plaintiffs argue that the Named Plaintiffs, like all other class members, "have been inadequately

screened and assessed under the NHRA, have been discriminated against in violation of the ADA and Section 504, and have not been provided services with 'reasonable promptness' under the Medicaid Act." *Id.* They contend that "[t]he fact that individual class members may have somewhat different needs, or may have entered the nursing homes through different processes, or may be entitled to or need different services, does not justify denying class certification." *Id.* (quoting *Rolland*, 1999 WL 34815562, at *7). Plaintiffs also cite *Rolland* for the proposition that the Named Plaintiffs' claims are typical of the class even though, subsequent to the filing of this action, they individually received some form of the evaluative screening they request as relief. *Id.* at 8-9.

Plaintiffs next argue that the Named Plaintiffs will "fairly and adequately protect the interests of the class," in satisfaction of the fourth prerequisite to class certification. *Id.* at 9 (citing FED. R. CIV. P. 23(a)(4)). They identify three necessary elements: "The Court must inquire whether the Named Plaintiffs have the ability and the incentive to represent the claims of the class vigorously, that they have obtained adequate counsel, and that the Named Plaintiffs do not have interests adverse to the class." *Id.* (quoting *Rancourt v. Concannon*, 207 F.R.D. 14, 16 (D. Me. 2002)). Plaintiffs argue that the Named Plaintiffs have the incentive to represent the claims of the class because they "will benefit from the same injunction that is intended to benefit all class members." *Id.* (quoting *Risinger ex rel. Risinger v. Concannon*, 201 F.R.D. 16, 22 (D. Me. 2001)). They further contend that adequate counsel is "rebuttably presumed" and that Plaintiffs have obtained

competent counsel. *Id.* (citing *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987)). Finally, they assert that the Named Plaintiffs have suffered the same legal injury as the proposed class, so their interests are not adverse to the class. *Id.* (citing *Curtis v. Comm'r Me. Dep't. of Human Services*, 159 F.R.D. 339, 341 (D. Me. 1994)).

The Plaintiffs acknowledge that they must satisfy one of three elements of Rule 23(b). They argue that the putative class satisfies 23(b)(2) because declaratory or injunctive relief is appropriate respecting the class as a whole. Quoting First Circuit law, the Plaintiffs explain, "the conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions." *Id.* (quoting *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)). The Plaintiffs note that this is a civil rights class action seeking declaratory and injunctive relief, which they argue "is exactly the type of litigation that . . . should be certified under Rule 23(b)(2)." *Id.* at 10. Furthermore, they argue that 23(b)(2) cases should be certified "where there is a danger that the individual's claim may be moot, [or] where a declaration of the rights of one plaintiff does not automatically translate into appropriate and timely relief for other class members . . . ." *Id.* (citing *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985)). Plaintiffs warn that there is a danger of mootness in this case because DHHS attempted to address at least some of the claims after the filing of the initial complaint by screening the Named Plaintiffs. *Id.* They also argue that there is a risk that a declaration of the rights of one plaintiff will not resolve the problems of other class

members because requiring the DHHS to fulfill its statutory requirements as to one individual will not resolve the systemic problems that are alleged. *See id.*

### 2. DHHS's Opposition

DHHS responds that Plaintiffs failed to satisfy the prerequisites of numerosity, commonality, and typicality under 23(a) and that they failed to demonstrate that a class action is appropriate under 23(b).

Turning to numerosity, DHHS argues that "the number of the unidentified proposed class members is unknown" and that the Court should deny class certification if it finds that "plaintiff's contention as to the size of the class is purely speculative." *Def.'s Opp'n.* at 5 (quoting *Vigue v. Ives*, 138 F.R.D. 6, 8 (D. Me. 1991)). DHHS puts the number of identified individuals in the class at thirty-seven.[3] *Id.* at 2. DHHS argues that the authority Plaintiffs cite for the proposition that a class of forty is generally sufficient to satisfy the numerosity requirement is "pure *dictum*, because the actual numbers of individuals cited in the classes under consideration in those cases were much higher." *Id.* at 6.

DHHS further argues that joinder of the plaintiffs is practicable. First, it states that "[j]oinder of potential class members is more likely to be found practicable where all class members can be easily identified." *Id.* (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985)). It argues that here "there is a discrete, relatively small number of individuals who have been personally identified." *Id.* at 6-7. Second, DHHS asserts that "where all members reside in a

---

[3] DHHS excludes the Named Plaintiffs in numbering the identified individuals in the class. *See Def.'s Opp'n.* at 2.

geographically compact area, joinder is more readily achieved." *Id.* at 7. They argue that the proposed class resides in a geographically compact area because thirty-four of the thirty-seven class members live in Southern Maine, which they define as "Penobscot County and south." *Id.* Third, DHHS predicts that the class will actually be smaller than thirty-seven since some of the thirty-seven will likely be satisfied with their current level of care, and Rule 23(c)(2)(B)(v) requires that individuals who do not wish to be part of the class be allowed to opt-out. *Id.*

DHHS next argues that the commonality requirement of 23(a)(2) is not met. *Id.* It divides Plaintiff's request for relief into two categories: 1) a procedural category, seeking an order that DHHS perform Pre-Admission Screening and Resident Review (PASRR) assessments; and 2) a substantive category, seeking an order that DHHS "provide appropriate placement and specialized services." *See id.* It concedes that the former request is common for the entire class but asserts it has taken steps to provide this relief. *Id.* at 7-8. It submits that lack of a PASRR assessment alone "is not sufficient to support a class." *Id.* at 8. It argues that the latter request raises "no commonality because determinations of the appropriate specialized services and placement must be made on a client-by-client, case-by-case basis depending on the unique circumstances of each individual." *Id.*

DHHS argues that Rule 23(a)(3)'s typicality requirement is not met because "the [N]amed [P]laintiffs share very little connection with the identified proposed class members." *Id.* at 8-9. DHHS observes that the Named Plaintiffs are younger than most of the other identified members of the proposed class. *Id.* at 9. It argues

that the original goals of their lawsuit were "to live and interact with people closer to their own age" and that those goals "would not apply to an individual in a nursing home in his or her later years of life." *Id.* DHHS further argues that the mental and physical conditions of the unidentified proposed class members are unknown, so the Named Plaintiffs "cannot demonstrate that their claims are typical of the unidentified proposed class." *Id.*

DHHS gives brief treatment to Plaintiffs' Rule 23(b)(2) argument, countering that it is not satisfied for the same reasons Rule 23(a)(2) commonality is not satisfied. *Id.*[4]

### 3.  Plaintiffs' Reply

Plaintiffs reply that the class is sufficiently identified for class certification. *Pls.' Reply* at 2. It argues that the class definition is "virtually identical" to that of a class certified by the United States District Court for the District of Massachusetts in *Rolland*, "except that Plaintiffs have excluded individuals with mental retardation or autism, and have limited the class to those individuals with 'related conditions.'" *Id.* (citing *Rolland*, 1999 WL 34815562, at *2)). They argue that DHHS's characterization of the class as "broad and imprecise" is based on the premise that the class definition makes no reference to age or cerebral palsy, which DHHS saw as the focus of the initial complaint; yet Plaintiffs contend that DHHS "has acted or refused to act on grounds applicable to all with 'related conditions'

---

[4] DHHS also argues that 23(b)(3) is not satisfied. *Def.'s Opp'n.* at 9-10. However, Plaintiffs are only seeking certification under 23(b)(2). *Pls.' Reply* at 5 n.3. A party seeking class certification need only satisfy one of the Rule 23(b) elements. *See* FED. R. CIV. P. 23(b). The Court does not reach DHHS's contentions regarding 23(b)(3).

(excluding autism), not just those with cerebral palsy." *Id.* Plaintiffs further argue that a Rule 23(b)(2) class "need not establish the precise number or identity of class members." *Id.* at 3 (quoting *Rolland*, 1999 WL 34815562, at *3).

Turning to numerosity, Plaintiffs refute DHHS's figure of thirty seven. *Id.* at 3. They argue that the class currently has at least forty members with cerebral palsy and up to eighteen members with epilepsy.[5] *Id.* Additionally, they maintain that the class is "fluid" and contains those who will enter a nursing facility at a later date. *Id.* Plaintiffs also contend that joinder is impracticable because class members' are disabled, reside throughout the state, are not easily identifiable due to patient confidentiality concerns, and their participation in the needs-based Medicaid program indicates financial difficulty. *Id.* at 4.

Plaintiffs reject DHHS's contention that commonality is lacking because class members request individualized relief. They argue that they request an order that would put in place a system to address the individual needs of class members but "do not request that the Court approve a specific service." *Id.* They contend that "the Court has rejected similar arguments that differences in medical diagnoses and conditions undermine commonality and typicality." *Id.* at 4-5 (citing *Rancourt*, 207 F.R.D. at 15-16; and *Risinger*, 201 F.R.D. at 20-21).

---

[5] Plaintiffs assert that "there are currently 18 individuals enrolled in the MaineCare program who have epilepsy that manifested prior to age 22 residing in Maine nursing facilities who by definition would be included in the proposed class." *Pls.' Reply* at 3. However, they concede that they are unaware how many of those 18 "also have diagnoses of mental retardation, autism, dementia, or Alzheimer's Disease, which would eliminate them from the proposed class, or whether they also have a diagnosis of C[erebral] P[alsy]," in which case they would have been included in the forty-one figure. *Id.* at 3 n.5.

Finally, Plaintiffs argue that DHHS's argument that differences in age between the Named Plaintiffs and the rest of the class lacks merit. *Id.* at 5. They assert individual's in their later years of life maintain their right to "live independently in the community," "to appropriate medical services," and to choose "where [they] live[] or whom [they] interact[] with." *Id.*

## III. DISCUSSION

### A. Class Certification Standard

Before certifying a class, the Court must review whether the Plaintiffs have met their burden of proving each Rule 23(a) factor and one Rule 23(b) requirement. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). A court must "conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Id.* When legal and factual premises of a case are disputed, such that "the class action would be proper on one premise but not another," a district court "has the power to test disputed premises at the certification stage" by probing "behind the pleadings to formulate some prediction as to how specific issues will play out." *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 17 (1st Cir. 2008) (internal punctuation and citations omitted). However, "the district court must evaluate the plaintiff's evidence . . . critically without allowing the defendant to turn the class-certification proceeding into an *unwieldy* trial on the merits." *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 17 (1st Cir. 2005) (emphasis in original).

### B. Rule 23(a) Factors

Rule 23(a) requires a showing of numerosity, commonality, typicality, and adequacy of representation. FED. R. CIV. P. 23(a). DHHS contests numerosity, commonality, and typicality. Nevertheless, because the First Circuit directs district courts to undertake a "rigorous analysis," the Court addresses each requirement. *Smilow*, 323 F.3d at 38; *see In re Light Cigarettes Marketing Sales Practices Litigation*, No. 1:09-md-02068-JAW, 2010 WL 4901785, at *11-13 (D. Me. Nov. 24, 2010) (assessing all requirements even though numerosity and commonality were conceded), and *Donovan v. Phillip Morris USA, Inc.*, 268 F.R.D. 1, 10 (D. Mass. 2010) (assessing all requirements even though all four were conceded).

### 1.    Numerosity

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). There is no threshold number of class members that automatically satisfies this requirement. *Gen'l Tel. Co. Nw. v. EEOC*, 446 U.S. 318, 330 (1980). Nevertheless, the First Circuit has provided numerical suggestions. The First Circuit favorably cited authority holding numerosity is generally satisfied if "the potential number of plaintiffs exceeds 40." *Garcia-Rubiera*, 570 F.3d at 460 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3rd Cir. 2001)). Plaintiffs call this appellate comment dictum. Indeed, the forty class member figure was not directly relevant to that case as the plaintiff class in *Garcia-Rubiera* was estimated to be around 500,000. Nevertheless, the forty class member figure is in line with decisions from many other circuits. *See* 5-23 Jerold L. Solovy, et al., MOORE'S FEDERAL PRACTICE, §

23.22 (Matthew Bender 3d ed.) ("a class of 41 or more is usually sufficiently numerous") (citing cases from the 3rd, 4th, 7th, 9th, 10th, and D.C. circuits). Given the weight of authority and its positive citation by the First Circuit, the figure of forty is a useful guide in considering how many class members meet the numerosity requirement.

Plaintiffs have provided evidence that the size of the class will include well over forty members. Plaintiffs cite deposition testimony and Maine government websites to demonstrate that there are at least forty individuals with cerebral palsy who fit the class definition. *Pls.' Mot.* at 3, 3 n.4. They further note there are a number of other individuals with epilepsy and other related conditions who are likely to fit the class definition. *Id.* at 3, 3 n.5. They cite statistics indicating that "there are new individuals entering nursing facilities each day who are at risk of the same rights violations and are members of the proposed class." *Id.* at 3. DHHS makes no attempt to undermine the statistical bases for Plaintiffs' figures. *See Def.'s Opp'n.* Instead, it argues for a deflated class size. The Court finds these arguments unconvincing.

First, DHHS discounts class members with related conditions other than cerebral palsy, arguing that the inclusion of class members with varying medical conditions makes the class "broad and imprecise." *Def.'s Opp'n.* at 3. This argument is better addressed to the consideration of commonality and typicality than to numerosity. The class definition incorporates specific statutory language that includes individuals with conditions other then cerebral palsy. 42 C.F.R. §

435.1010.  DHHS essentially alters the class definition to shrink the size of the class.  For purposes of numerosity, the Court considers the size of the class as defined.  If that definition does not satisfy other 23(a) requirements, certification can be denied on those grounds.

Second, DHHS's argument that the class will be smaller because class members must be given the opportunity to opt-out is simply incorrect.  Under the plain language of Rule 23(c)(2)(B), the opt out requirement only applies to classes certified under 23(b)(3).  FED. R. CIV. P. 23(c)(2)(B); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("notice to and therefore precise definition of the members of the suggested class are important to certification of a (b)(3) class, notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited").  Here, because Plaintiffs attempt to certify the class under 23(b)(2), they need not give class members the opportunity to opt-out.

Third, *Vigue*, which DHHS cites in support of its assertion that the class size is speculative, is inapposite.  In *Vigue*, the plaintiff failed to satisfy numerosity of a proposed class including "[a]ll persons residing in the State of Maine who are or will become eligible for both Medicaid and Medicare program benefits and who need or will need power or customized wheelchairs."  138 F.R.D. at 8.  There, the plaintiff's only direct evidence of the number of proposed class members was a wheelchair dealer's testimony that she had rejected at least five individuals eligible for Medicaid and Medicare.  *Id.* at 8.  The plaintiff attempted to extrapolate that figure

to fifty by offering an unsupported estimate that there were between ten and fifteen wheelchair dealers in Maine. *Id.* The Court considered this extrapolation too speculative to be considered evidence of a fifty member class. *Id.*

Here, Plaintiffs have provided direct evidence of at least forty class members. They have posited that the class includes additional unidentified class members, *Pls.' Mot.* at 5, but they do not rely on a specified number of unidentified class members to meet the numerosity requirement. The inclusion of unidentified class members merely serves to emphasize that the class is probably larger than the forty member figure for which Plaintiffs have provided direct evidence. *Yaffe* established that a Rule 23(b)(2) class need not precisely identify every class member, 454 F.2d at 1366, so Plaintiffs' failure to do so does not make the class overly speculative.

Although Plaintiffs' class is large enough to satisfy the First Circuit's advisory figure, further considerations go into the Rule 23(a)(1) analysis. "The facts and circumstances of each case are to be taken into account to determine numerosity under 23(a)(1)." *Andrews*, 780 F.2d at 131. Courts in the First Circuit have considered a number of factors in considering whether joinder of class members is impracticable. "Joinder is more likely to be practicable when class members are from the same geographic area" and "where class members can be easily identified." *Id.* 131-32. Furthermore, disability, confinement and financial difficulty, and the inability of class members to bring their own separate actions have been found to be factors strongly weighing against the practicability of joinder. *See Rolland*, 1999 WL 34815562, at *3.

The Court finds that joinder is not practicable in this case. The putative class members all suffer from disabilities as defined under the NHRA. Pursuant to the class definition, they are all either admitted to nursing facilities or candidates for admission. Their enrollment in MaineCare suggests their financial resources may be limited. These qualities would make it difficult for the putative class members to bring their own individual actions.

DHHS asserts that because most identified plaintiffs live in the southern half of Maine, geographic diversity does not make joinder impracticable. For support, DHHS cites *Andrews*. In *Andrews*, the First Circuit upheld the district court's finding of a lack of geographic diversity where the putative class members all lived in southeastern Massachusetts, 780 F.2d. at 132, a geographic area far more confined than "Southern Maine" if defined—as DHHS does—to include "Penobscot County and south". *Def.'s Opp'n. at 7*. Moreover, any number of unidentified members of the proposed class could live in the northern part of Maine. *See Risinger*, 201 F.R.D. at 19 ("geographic dispersion . . . throughout the state of Maine" was a factor making joinder impracticable). Combining their location throughout Maine with the difficulties their disabilities may place on their ability to travel, the proposed class members' geographic dispersion weighs against the practicability of joinder.

Finally, because there are likely unidentified and future class members, there would be practical difficulties with identifying and joining all of the potential class members. *See Risinger*, 201 F.R.D. at 19. DHHS's characterization of the

class as a "discrete, relatively small number of individuals who have been personally identified," *Def.'s Opp'n.* at 6-7, is based on its limited definition of the class. The class, as defined, is sufficiently numerous, fluid, and in all likelihood growing to meet the numerosity requirement.

## 2. Commonality

The commonality prerequisite is met when "there are questions of law or fact common to the class." FED. R. CIV. P. 23 (a)(2). "Rule 23(a)'s requirement of commonality is a low bar." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19. Here, questions of DHHS's course of conduct are common to all class members, namely its alleged failure to evaluate and provide services to the proposed class members according to federal standards. Those factual questions implicate a common set of federal statutes.

DHHS concedes that whether PASRR screenings have taken place is a common question, but argues that it is no longer relevant because DHHS has committed to putting in place an adequate PASRR system for the identified proposed class. It essentially asks the Court to ignore one of the Plaintiffs' claims by assuring the Court that it is being addressed. The Court cannot accept the State's unsupported assurance. Whether proper PASRR screenings are taking place remains at issue in this case, *see Pls.' Mot.* at 9 n.7, and as DHHS conceded, it is a common question. Furthermore, Plaintiffs do not ask the Court to order individualized remedies for the various class members. Instead, they seek an order requiring DHHS to develop a system of evaluation and implementation of

corresponding services that complies with federal standards. In other words, class members seek relief from systemic barriers to proper treatment. This District has certified classes on nearly identical bases in the past. *See Rancourt*, 207 F.R.D. at 15-16; and *Risinger*, 201 F.R.D. at 20-21.

### 3. Typicality

The typicality prerequisite requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This requirement is satisfied when the representatives are "part of the class," *Falcon*, 457 U.S. at 156, and their claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory," *Garcia-Rubiera*, 570 F.3d at 460 (internal quotations and punctuation omitted). Here, the representatives (the Named Plaintiffs) fit the class definition and assert the same legal claims as the other class members. Those legal claims are based on a common course of alleged conduct by DHHS.

DHHS's argument that the Named Plaintiffs are not typical of the rest of the class because they are younger than most class members is unavailing. DHHS provides no support for the notion that older individuals have less interest in proper medical services and independent living outside of a nursing facility than younger individuals. All class members, regardless of age, are entitled to receive care that is in compliance with federal law, and that is all Plaintiffs seek in this suit. The same can be said for class members with different conditions; whether they have cerebral

palsy, epilepsy, or other related conditions, all class members are entitled to medical care that meets legal standards. That the Named Plaintiffs have cerebral palsy does not render their claims atypical of those class members who suffer from other conditions.

### 4. Adequacy

The adequacy prerequisite requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiff must make a two-part showing: first, "that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews*, 780 F.2d at 130. DHHS does not contest this prerequisite. *See Def.'s Opp'n.* at 1. Nevertheless, the Court addresses this prerequisite pursuant to its obligation to conduct a rigorous analysis.

The Named Plaintiffs seek the same injunctive and declaratory relief for themselves that they seek for the class as a whole. Their willingness to bring the initial suit indicates that they are motivated to achieve such relief. As for adequacy of counsel, Plaintiffs' attorneys have filed declarations averring to their skill and experience in class action litigation and the underlying areas of substantive law. *Decl. of Jeffrey Neil Young* (Docket # 25); *Decl. of Martha Jane Perkins* (Docket # 26); *Decl. of Jack Comart* (Docket # 27); *Decl. of Staci Converse* (Docket # 28). The Court is satisfied that they are qualified and experienced. Because their interests are in line with the rest of the class and because they have retained qualified

counsel, the Court concludes that the Named Plaintiffs will fairly and adequately protect the interests of the class.

## C. Rule 23(b)(2)

Having satisfied all four of the Rule 23(a) prerequisites, Plaintiff must establish that DHHS "has acted or refused to act on grounds that apply generally to the class, so that injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "[T]he conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions in which members of the class are often incapable of specific enumeration." *Yaffe*, 454 F.2d at 1366. Plaintiffs allege a systemic problem with DHHS's procedures, and they seek injunctive and declaratory relief to change DHHS's conduct on an agency-wide basis. Such relief is appropriate respecting the whole class because if Plaintiffs' allegations prove correct, every putative class member will be entitled to the relief.

If the same relief could be obtained without class certification, the Court may be justified in denying class certification. *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985). However, that possibility appears unlikely in this case. If the putative class members were to proceed on an individual basis, they might obtain the individual services they seek without obtaining systemic changes to DHHS's conduct that would benefit the class as a whole, a result that could lead to countless individual claims seeking the exact same relief. Obtaining relief on a class-wide basis ensures an efficient judicial remedy to any deficiency in DHHS's conduct.

Because Plaintiffs have satisfied the four prerequisites of Rule 23(a) and one element of Rule 23(b), class certification is appropriate.

**IV. CONCLUSION**

The Court GRANTS the Plaintiffs' Motion for Class Certification (Docket # 23).

SO ORDERED.

/s/ Judge John A. Woodcock, Jr.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 31st day of January, 2011