## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| JACOB VAN METER, ADAM FLETCHER by and through his guardian GAIL FLETCHER, and ERIC REEVES, on behalf of themselves and other similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>BRENDA HARVEY, COMMISSIONER OF MAINE DEPATMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Docket no. 1:09-cv-00633-NT |

## OPINION AND ORDER ON PROPOSED SETTLEMENT

The parties have entered into a proposed Settlement Agreement of Plaintiffs'
class action suit seeking injunctive and declaratory relief under Title II of the
Americans with Disabilities Act, 42 U.S.C § 12132, Section 504 of the Rehabilitation
Act, 29 U.S.C. § 794(a), the Medicaid Act, 42 U.S.C. §§ 1396r(e)(7), §1396a(a)(8),
1396a(a)(10)(A), and 42 U.S.C. § 1983. The proposed Settlement Agreement
provides for a Home and Community Based Waiver (HCBW) program,
Preadmission Screening and Annual Resident Review (PASARR) screening and
evaluations, and specialized services for Jacob Van Meter, Adam Fletcher, and Eric
Reeves, the named Plaintiffs, and a class of others similarly situated.[1]

---

[1]  In January of 2011, this Court certified the Plaintiff class, defined as:

A fairness hearing was held on April 24, 2012 on the proposed Settlement Agreement. For the reasons that follow, the Court finds that the proposed Settlement Agreement is fair, adequate, and reasonable and hereby **APPROVES** the Settlement Agreement.

## Rule 23(e)(2) Fairness Determination

Federal Rule of Civil Procedure 23(e)(2) allows the Court to settle a class action "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts consider a number of factors in determining whether a proposed settlement agreement is "fair, reasonable, and adequate."

> There is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement. In making this assessment, other circuits generally consider the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the

---

Maine residents who currently are or in the future will be: (1) eligible for and enrolled in MaineCare, (2) age 21 or older, (3) have a related condition as defined at 42 C.F.R. § 435.1010, other than autism, and who do not have a diagnosis of Alzheimer's or dementia, and (4) who are or should be screened for admission to nursing facilities pursuant to 42 U.S.C. § 1396r(e)(7) and 42 C.F.R. § 483.112 *et seq.*

Order Granting Motion to Certify Class (Doc. No. 41). 42 C.F.R. § 435.1010 defines a related condition as:

[A] severe, chronic disability that meets all of the following conditions:
(a) It is attributable to —
    (1) Cerebral palsy or epilepsy; or
    (2) Any other condition, other than mental illness, found to be closely related to mental retardation because this condition results in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons, and requires treatment or services similar to those required for these persons.
(b) It is manifested before the person reaches age 22.
(c) It is likely to continue indefinitely.
(d) It results in substantial functional limitations in three or more of the following areas of major life activity:
    (1) Self-care.
    (2) Understanding and use of language.
    (3) Learning.
    (4) Mobility.
    (5) Self-direction.
    (6) Capacity for independent living.

42 C.F.R. § 435.1010.

result likely to be reached at trial. Specifically, the appellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration.

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); *see also Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (district court must "assure itself" that parties have validly consented to settlement, reasonable notice has been given to potential objectors, settlement does not violate federal law, settlement is not impermissible as to third parties, and court's continued involvement is not burdensome). The First Circuit also recognizes a presumption in favor of a proposed settlement agreed to after meaningful discovery and arms-length negotiations. *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). The Court will consider each of the relevant factors in turn.[2]

### 1. Comparison of Proposed Settlement with Likely Result of Litigation

The Plaintiffs have a strong case and were likely to prevail at least in part at trial. In *Rolland v. Romney*, 318 F.3d 42 (1st Cir. 2003), a group of nursing home residents with mental retardation or other developmental disabilities residing in Massachusetts nursing homes brought a class action suit on behalf of themselves and others similarly situated alleging, like the Plaintiffs, violations of 42 U.S.C. §

---

[2]     The Court notes as a threshold matter that the parties have consented to the proposed settlement, the proposed settlement is consistent with federal law, and the proposed settlement is not impermissible as to any affected third parties.

1396r and seeking injunctive relief.[3] *Rolland*, 318 F.3d at 44. Following a magistrate judge's denial of the Commonwealth's motion to dismiss, the *Rolland* plaintiffs and the Commonwealth entered into a settlement agreement that operated as a stay of litigation. *Id.*; *see also Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) (approving the settlement agreement). In the settlement agreement, the Commonwealth committed to providing specialized services for all Massachusetts nursing home residents identified by the PASARR process as needing them. *Rolland,* 318 F.3d at 44. When the Commonwealth subsequently failed to do so, on plaintiffs' motion the magistrate judge lifted the stay and found that the plaintiffs had a privately enforceable right to specialized services under federal law. *Id.* at 45. The First Circuit affirmed, holding that states have a duty to provide specialized services that constitute active treatment as required under § 1396r(e)(7), and that this duty can be enforced by suit under § 1983. *Id.* at 55, 57. *Rolland* is a powerful precedent for Plaintiffs' position that they are entitled to injunctive relief enforcing the PASARR evaluation, specialized services, and active treatment requirements of § 1396r(e)(7).

The proposed Settlement Agreement gives the named Plaintiffs and the Plaintiff class almost all of the relief they requested in their Amended Complaint. Because the Plaintiffs are receiving so much of their requested relief in the proposed Settlement Agreement, the Court is not concerned that the Plaintiffs by

---

[3]      Section 1396r's screening and specialized services requirements apply equally to individuals with mental retardation and individuals with other related conditions, like the named Plaintiffs and the Plaintiff class. *See* § 1396r(e)(7)(g)(ii) ("An individual is considered to be 'mentally retarded' if the individual is mentally retarded or a person with a related condition . . . .").

agreeing to the proposed Settlement Agreement are unnecessarily and unreasonably sacrificing relief they might ultimately have recovered at trial.

### a. Plaintiffs' Amended Complaint

In their Amended Complaint, the Plaintiffs requested that the named Plaintiffs and the Plaintiff class, with reasonable promptness, be screened and evaluated consistent with the PASARR provisions of the Nursing Home Rehabilitation Amendments to the Medicaid Act; provided with comprehensive assessments, evaluations, and screenings to determine eligibility for community services; provided with appropriate services with reasonable promptness; have the choice to receive community services in either an institutional or integrated community setting; be provided with long-term care services and supports in the community; and, lastly, that Maine DHHS refrain from providing long-term care solely in institutional only. Amended Complaint at 22 (Doc. No. 30).

### b. The Proposed Settlement

The proposed Settlement Agreement has two main parts: first, the establishment of an HCBW program for the named Plaintiffs and the Plaintiff class, and second, the provision of PASARR Level I screenings, PASARR Level II evaluations and specialized services for the named Plaintiffs and the Plaintiff class.

The "Home and Community Based Waiver" is defined by the proposed Settlement Agreement as "a program for home and community based services approved and operated pursuant to Section 1915(c) of the Social Security Act, codified at 42 U.S.C. § 1396n(c)." Settlement Agreement at 1 (Doc. No. 77-1). The

proposed Settlement Agreement provides that the Defendant will develop and

institute an HCBW program for the Plaintiff class that will include

> [H]ome supports; community supports; employment specialist services;
> work supports; home accessibility adaptations; communication aids;
> transportation services; assistive technology; consultation services and
> assessments; counseling and crisis services; maintenance occupational,
> physical and speech therapy; case management and specialized
> medical equipment to the extent that those services are subject to
> federal financial participation under the Medicaid program.

*Id.* at 3. The HCBW program will offer services to 15 members of the Plaintiff class

for its first year and an additional 10 members for each additional year, up to 75

members. *Id.* Participation in the HCBW is completely voluntary. Class members

who wish to continue living in nursing homes do not have to apply for the HCBW

program.

The proposed Settlement Agreement also provides that within 30 days of

entry of the Settlement Agreement, Maine DHHS will remind all nursing facilities

of their responsibility to screen and identify residents who they know or suspect

have a "related condition" as required under PASARR Level I; within 60 days of

entry of the Settlement Agreement, Maine DHHS will perform a program review of

its PASARR Level II process for compliance with federal regulations; within 45 days

of Maine DHHS's review of its PASARR Level II process, the Plaintiffs' experts will

work with Maine DHHS to revise its PASARR Level II process if necessary, and

once a revised process is in place, Maine DHHS will perform within 60 days

PASARR II evaluations of all of the Plaintiff class and provide specialized services

within 30 days of the evaluation to any member of the Plaintiff class identified as

requiring specialized services. *Id.* at 5. Maine DHHS will also assign a case monitor to each member of the Plaintiff class and establish a Complex Case Group to review difficult and unusual cases. *Id.* at 6.

Maine DHHS has already begun to comply with many of the provisions of the proposed Settlement Agreement. It has hired a coordinator for the HCBW program and assigned case monitors to the Plaintiff class members. It has applied for the HCBW program with CMS, received CMS's questions about the application, and prepared answers to CMS's questions, which, once submitted, will begin CMS's approval process for the HCBW program. Defendant's counsel informed the Court that she believes that CMS will approve the HCBW application. The HCBW program will be funded in fiscal year 2013 using funds already within the Office of Adults with Cognitive and Physical Disabilities' budget. For fiscal year 2014, there will be a line item in the budget for waiver services.

Maine DHHS has already notified nursing facilities of their responsibility to screen individuals with related conditions under PASARR I. It has also already reviewed its PASARR II process and held initial meetings with Plaintiffs' experts about revisions to the process. Finally, it has established a Complex Case team as required under the proposed Settlement Agreement.

In addition to achieving their primary goal of allowing the named Plaintiffs and the Plaintiff class an opportunity to live independently, the Plaintiffs have essentially received all of the injunctive relief requested in the Amended Complaint.

Therefore, the Court is satisfied that the substance of the proposed settlement is fair, reasonable, and adequate.

### 2. Reaction of Class

#### a. Objections

The Court has only received one objection to the proposed Settlement Agreement from a current nursing facility resident who wishes to remain in her nursing facility. Objection to Settlement (Doc. No. 104).[4] The Court does not consider this an objection to the terms of the proposed Settlement Agreement, which does not require that any class members leave their nursing facilities. The Court considers the absence of any other objections to the proposed Settlement Agreement significant.

#### b. Notice

The Court is satisfied that the notice that was mailed to class members, which was reviewed by the Court, was clear and provided class members with a meaningful opportunity to object to the proposed Settlement Agreement. *See* Notice to Class (Doc. No. 96-2). Plaintiffs' counsel sent out notices to the 121 class members identified by Maine DHHS, of which only two were returned as undeliverable. Approximately sixty additional notices were sent out to individuals who were identified as responsible parties to class members. Only two of the notices sent to those approximately sixty responsible parties were returned as undeliverable.

---

[4]     The objection reads: "I do not agree with [the proposed settlement] because I have been assessed by the State of Maine and wish to continue to reside in the Nursing Facility in which I am currently living."

The notice to class members made clear that if class members agreed with the terms of the proposed Settlement Agreement, they were not required to do anything else.  The notice also informed class members that they could return a form attached to the notice authorizing Maine DHHS to give their health information to Plaintiffs' counsel if they wished to have class counsel ensure that they got the benefits to which they were entitled under the proposed Settlement Agreement. Twenty-eight members of the class returned the form and authorized Maine DHHS to release their health information; five returned the form affirmatively refusing the release of their health information. Of the twenty-eight authorizations, sixteen were from class members who currently reside in nursing facilities. Of the five refusing to disclose, two were from class members currently residing in nursing facilities.

The Court is convinced by the absence of objections and the proportion of class members who expressed their interest by returning the form authorizing release of their health information that the class views the proposed Settlement Agreement favorably.

**3.  Litigation Stage and Amount of Discovery**

The Court next considers whether the discovery conducted prior to the proposed settlement "enabled the attorneys to assess the merits of the action and negotiate a principled compromise." *Rolland*, 191 F.R.D. at *10. The parties conducted discovery to identify class members, gather information about the class members, and obtain the financial details of DHHS's existing programs. The

9

discovery included several depositions of DHHS officials, written interrogatories and production of documents.

While there was no dispositive motion practice in this case, the motion to certify the class and a motion for a preliminary injunction were vigorously contested. The Court is satisfied that the litigation had proceeded to a point where there was sufficient development of the issues and adequate discovery to assess the merits of the action and negotiate a fair settlement.

### 4. Quality of Counsel

The Court must be confident that counsel representing the named Plaintiffs and Plaintiff class advocated skillfully and zealously on their clients' behalf. *In Re New Motor Vehicles Canadian Export Antitrust Litigation*, No. 1532, 2011 WL 1398485, at *3 (D. Me. April 13, 2011). The *Rolland* court noted that when the parties' counsel are experienced and knowledgeable, "their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland*, 19 F.R.D. at *10 (citing *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999)).

The record includes affidavits from Plaintiffs' counsel detailing their credentials to litigate this suit. Mr. Young has handled numerous class actions, as well as numerous disability discrimination suits under the Americans with Disabilities Act. He has served as the chapter editor for the BNA's Employment Discrimination Law treatise, and he helped draft Maine's disability discrimination statute. Affidavit of Jeffrey Neil Young (Doc. No. 25). Mr. Comart is employed by

the Maine Equal Justice Foundation, which has represented plaintiffs in class actions for over 25 years. Affidavit of Jack Comart (Doc. No. 27). Ms. Converse is employed by The Disability Rights Center, which has represented plaintiff classes in numerous class action suits for people with disabilities, and individual plaintiffs with disabilities in numerous claims in the State of Maine. Affidavit of Staci Converse (Doc. No. 28). Ms. Perkins is employed by the National Health Law Program, which has substantial expertise in health law and civil rights litigation and has successfully litigated many Medicaid cases and class action suits. Affidavit of Martha Jane Perkins (Doc. No. 26). The Court is satisfied that class counsel are well-qualified and experienced.

## 5. Conduct of Negotiations

The "conduct of negotiations" inquiry looks at whether the proposed Settlement Agreement is the result of a good faith, arms-length negotiation, and whether there is any evidence of collusion between the parties. *Rolland*, 191 F.R.D. at *11.

Before the parties entered settlement negotiations with Magistrate Judge Rich but after they had decided that they wished to reach a settlement, the parties discussed the framework of a potential settlement. On June 24, 2011, the parties spent almost a full day in a settlement conference with Magistrate Judge Rich and left the conference with an overall agreement but without settling many of the details of the HCBW program. After the settlement conference the parties met at least once a week until the end of August to work out the remaining details of the

11

proposed Settlement Agreement and moved for a 30-day extension to complete the Settlement Agreement.

The Court is satisfied that the proposed Settlement Agreement was the result of good faith negotiations and that there was no collusion between the parties.

## 6. Expense And Duration of Continued Litigation

At the fairness hearing, counsel for both parties represented to the Court that continuing with litigation would have been costly for both parties, requiring expensive expert testimony on both sides. Similar cases in other states that have not settled have resulted in lengthy, drawn-out proceedings, and both parties' counsel believe that the expeditiousness of the proposed Settlement Agreement is in the best interests of the population that the proposed Settlement Agreement will serve.

## 7. Recommendation of Neutral Parties

The Court did not receive any evaluations of the proposed Settlement Agreement by neutral parties. However, Plaintiffs' counsel informed the Court that disability rights advocates at the National Health Law Program, particularly Martha Jane Perkins of the National Health Law Program, admitted *pro hac vice* for purposes of this suit, believe that the proposed Settlement Agreement was very favorable to the Plaintiffs.

## 8. The Court's Continued Involvement

If Maine DHHS is able to implement the HCBW program without first establishing any Intermediate Care Facilities for Other Related Conditions (ICFs-

ORC),[5] the proposed settlement provides that the Court will retain jurisdiction "solely for the purposes of mediation and enforcement of the terms of the settlement agreement" for three years following the Court's approval of the proposed settlement. Settlement Agreement at 8 (Doc. No. 77-1). If Maine DHHS is required first to establish ICFs-ORC, the parties may either jointly move the Court for a reasonable extension of its jurisdiction for purposes of mediation and enforcement of the proposed settlement's terms, or either party may move the Court for an extension of the Court's jurisdiction for purposes of mediation and enforcement if the parties are unable to agree on the duration of the extension. *Id*. The Court is satisfied that the Court's three-year retained jurisdiction will not be unduly burdensome.

## CONCLUSION

Having considered all of the appropriate factors, the Court finds that the proposed settlement is fair, adequate, and reasonable, and hereby **APPROVES** the settlement.  A separate order will issue. The Court will retain jurisdiction in accordance with the terms of the Settlement Agreement.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 2nd day of May, 2012.

---

[5]     There was initially some concern that CMS might require the establishment of ICFs-ORC prior to establishing an HCBW for the Plaintiff Class in order to provide cost data acceptable to the CMS to support the state's application for an HCBW. The proposed Settlement Agreement contains provisions dealing with this possible contingency. Defendant's counsel indicated at the fairness hearing that the she believes that CMS will allow the state to use cost data from ICFs for Mentally Retarded individuals in lieu of ICFs-ORC for purposes of the waiver application.